Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>  Plaintiff,<br><br>vs.<br><br>MOMENTIVE GLOBAL, INC., SUSAN L. DECKER, DAVID A. EBERSMAN, ERIKA H. JAMES, SHERYL K. SANDBERG, ALEXANDER J. LURIE, DANA L. EVAN, BRAD D. SMITH, RYAN FINLEY, BENJAMIN C. SPERO, and SERENA J. WILLIAMS,<br><br>  Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**NATURE OF THE ACTION**

1.      This is an action brought by Plaintiff against Momentive Healthcare, Inc. ("Momentive" or the "Company") and the members of Momentive's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Momentive will be acquired by Zendesk, Inc. ("Zendesk") through Zendesk's subsidiary Milky Way Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

2.      On October 28, 2021, Momentive and Zendesk issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated October 28, 2021 (the "Merger Agreement") to sell Momentive to Zendesk.  Under the terms of the Merger Agreement, each Momentive stockholder will receive 0.225 shares of Zendesk common stock for each share of Momentive common stock they own (the "Merger Consideration").  Upon completion of the merger, it is estimated that current Momentive stockholders will own approximately 22% of the combined company and former Zendesk stockholders will own approximately 78% of the combined company. The Proposed Transaction is valued at approximately $4.13 billion.

3.      On December 6, 2021, Zendesk filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Momentive stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Zendesk's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors Allen & Company LLC ("Allen") and J.P.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1  Morgan Securities LLC ("J.P. Morgan").   Defendants authorized the issuance of the false and
2  misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

3       4.       In short, unless remedied, Momentive's public stockholders will be irreparably harmed
4  because the Registration Statement's material misrepresentations and omissions prevent them from
5  making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin
6  the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are
7
8  cured.

9                              **JURISDICTION AND VENUE**

10      5.       This Court has jurisdiction over the claims asserted herein for violations of Sections
11 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27
12 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

13
14      6.       The Court has jurisdiction over defendants because each defendant is either a
15 corporation that conducts business in and maintains operations in this District, or is an individual who
16 has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this
17 Court permissible under traditional notions of fair play and substantial justice.

18      7.       Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §
19 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District;
20 (ii) one or more of the defendants either resides in or maintains executive offices in this District; and
21 (iii) defendants have received substantial compensation in this District by doing business here and
22 engaging in numerous activities that had an effect in this District.
23
24                                  **THE PARTIES**

25      8.       Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of
26 Momentive.

27
28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.     Defendant Momentive is a Delaware corporation, with its principal executive offices located at One Curiosity Way, San Mateo, California 94403.  The Company provides software solutions that help companies turn stakeholder feedback into action in the United States and internationally.  Momentive's common stock trades on the Nasdaq Global Select Market under the ticker symbol "MNTV."

10.    Defendant Susan L. Decker ("Decker") has been a director of the Company since November 2017.

11.    Defendant David A. Ebersman ("Ebersman") is Chair of the Board, and has been a director of the Company since June 2015.

12.    Defendant Erika H. James ("James") has been a director of the Company since August 2018.

13.    Defendant Sheryl K. Sandberg ("Sandberg") has been a director of the Company since July 2015.

14.    Defendant Alexander J. Lurie ("Lurie") has been Chief Executive Officer ("CEO") of the Company since January 2016, interim Chief Financial Officer ("CFO") since March 5, 2021, and a director since December 2009.  Defendant Lurie also previously served as Chair of the Board from July 2015 to January 2016, and as interim CFO from April 1, 2019, through July 7, 2019.

15.    Defendant Dana L. Evan ("Evan") has been a director of the Company since March 2012.

16.    Defendant Brad D. Smith ("Smith") has been a director of the Company since May 2017.

17.    Defendant Ryan Finley ("Finley") founded the Company in 1999, and has been a director of the Company since its inception.

18.     Defendant Benjamin C. Spero ("Spero") has been a director of the Company since April 2009.

19.     Defendant Serena J. Williams ("Williams") has been a director of the Company since May 2017.

20.     Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.     Zendesk is a Delaware corporation, with its principal executive offices located at 989 Market Street, San Francisco, California 94103.  Founded in 2007, Zendesk is a service-first customer relationship management company, built to give organizations of all sizes, in every industry, the ability to deliver a transparent, responsive, and empowering customer experience.  With solutions designed to address an increasingly broad set of customer interactions, Zendesk allows organizations to deliver omnichannel customer service and customize and build apps across the customer journey. Zendesk has evolved its offerings over time to product and platform solutions that work together to help organizations understand the broader customer journey, improve communications across all channels, and engage where and when it's needed most.  Zendesk's common stock trades on the New York Stock Exchange under the ticker symbol "ZEN."

22.     Merger Sub is a wholly owned subsidiary of Zendesk.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.     Founded under the name "SurveyMonkey" in 1999, Momentive changed its name to Momentive Global Inc. in June 2021.  The Company is an agile experience management company focused on helping customers shape what's next.  Momentive's platform empowers users to collect, analyze, and act on feedback from customers, employees, website and app users, and market research

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

audiences. Its products enable more than 345,000 organizations to deliver better customer experiences, increase employee retention, and unlock growth and innovation. Momentive offers SaaS feedback solutions across three major product categories—Surveys, Customer Experience, and Market Research.

24.     Momentive offers survey software products that enable customers to measure, benchmark, and act on stakeholder feedback. The Company's products include, GetFeedback CX platform, which enables companies to engage and retain their customers based on the ability to continuously listen and act on digital feedback; GetFeedback Digital, which provides continuous and in-the-moment customer feedback from a company's website, web apps, and mobile apps; GetFeedback Direct, which enables survey deployment to company's customers through email and SMS; and GetFeedback Complete, an end-to-end customer experience solution that combines GetFeedback Digital and GetFeedback Direct. The Company also provides SurveyMonkey Audience, which enables organizations to collect and analyze real-time actionable data from targeted panelists; Expert solutions, which offers a suite of pre-built market research software modules, such as ad and video creative, product concept, packaging and logo design, brand name, and messaging and claims analysis for customers to test product and marketing concepts; TechValidate, a marketing content automation solution; SurveyMonkey Apply, an application management solution; and Wufoo that helps users create web and mobile forms, collect file uploads, and receive online payments. Momentive serves financial services, internet, technology, healthcare, media and entertainment, consumer goods and retail, transportation and logistics, government agencies, manufacturing, energy, education, professional services, and non-profit organizations.

25.     On November 9, 2021, Momentive announced its third quarter 2021 financial results. Total revenue was $114.8 million, an increase of 20% year-over-year. Enterprise sales revenue was $37.6 million, an increase of 37% year-over-year. Self-serve revenue was $77.1 million, an increase

of 13% year-over-year.  Paying users totaled approximately 883,100, an increase of approximately 79,900, or 10% from approximately 803,200 in the third quarter of 2020 ("Q3 2020").  Approximately 90% of paying users were on annual plans, up from 87% in the prior year.  Average revenue per user was $522, up approximately 9% from $478 in Q3 2020.

**The Proposed Transaction**

26.  On October 28, 2021, Momentive and Zendesk issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

SAN FRANCISCO & SAN MATEO, Calif--Zendesk (NYSE: ZEN) and Momentive (NASDAQ: MNTV) have entered into a definitive agreement under which Zendesk will acquire Momentive, including its iconic SurveyMonkey platform.  The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021.

Zendesk expects the combination to be growth accretive in its first full operating year and accelerate Zendesk's revenue plan to $3.5 billion in 2024, one year ahead of its previous target.  The companies' respective sizable customer bases and complementary capabilities are expected to provide significant opportunity for joint product adoption and increasing Momentive's enterprise traction.  Zendesk will reinvest savings from scale efficiencies into compelling growth opportunities to support the combination.  Upon the close of the transaction, Momentive CEO Zander Lurie will continue to lead Momentive's strong management team.

"The SurveyMonkey brand is iconic and we've admired their business from afar since the inception of Zendesk.  They truly democratized an industry—almost everyone in the world has responded to one of their surveys at some point," said Mikkel Svane, CEO & Founder, Zendesk.  "We're very excited to have them join the Zendesk mission along with Momentive's market research and insights products and together create a powerful new Customer Intelligence company.  We will deliver a rich, colorful picture of every customer so businesses really understand their customers and can build more authentic relationships."

"We look forward to combining with Zendesk to advance our mission and accelerate our long-term growth strategy," said Zander Lurie, CEO, Momentive.  "This is a testament to the strength of our agile products and talented team.  Zendesk and Momentive share a culture centered around our people, our communities and the customers we serve.  The synergies between our companies are proximate and compelling.  We are uniquely positioned to make Customer Intelligence a reality while delivering significant value for our shareholders."

- 7 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Acquisition to Create Powerful New Customer Intelligence Company**

In today's digital-first economy, it is imperative to build more meaningful relationships with customers. Meaning comes from a deep understanding of the customer and their experiences. Although businesses often have an endless supply of data, they lack actionable and personalized customer intelligence. Instead, businesses are left with a picture of the customer that is one dimensional, impersonal and incomplete.

Zendesk pioneered the ability to respond to what customers *say* and *do*, making it easier to deliver superior customer service. Momentive is a leader in capturing how customers *think* and *feel*, helping companies make critical decisions quickly and confidently.

With Momentive, Zendesk will create what businesses really need—a customer intelligence company that connects what customers say and do, with how they think and feel. The combination will give businesses the ability to:

- **Listen to your customers**: Collect critical information about customer needs, experiences and expectations
- **Develop a rich picture:** Bring a customer into focus by combining transactional data with market research and insights for the context to truly understand them
- **Act on insights**: Empower teams to take action with the full breadth of data about their customers as well as feedback and market insights to improve customer interactions

**Transaction Terms**

Following a comprehensive review, the boards of directors of Zendesk and Momentive have approved the transaction.

The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021. Upon closing of the transaction, Zendesk stockholders will own approximately 78% of the combined company and Momentive stockholders will own approximately 22% of the combined company. The transaction, which is anticipated to close in the first half of 2022, is subject to approval by Zendesk stockholders and Momentive stockholders, the receipt of required regulatory approvals and other customary closing conditions. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

Zendesk has published a presentation to provide an overview of the transaction, available on both Zendesk and Momentive's investor relations websites. Additional details and information about the terms and conditions of the transaction will be available in Current Reports on Form 8-K to be filed by Zendesk and Momentive with the Securities and Exchange Commission.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Quarterly Financial Results**

In separate press releases issued today, Zendesk announced financial results for the third quarter of 2021 and Momentive announced preliminary results for its third quarter of 2021.  Momentive will issue a press release to share its full third quarter financial results on November 9, 2021.

**Advisors**

Goldman Sachs & Co. LLC is serving as lead financial advisor and Centerview Partners LLC is also serving as financial advisor to Zendesk. Hogan Lovells US LLP is serving as legal counsel to Zendesk.  Allen & Company LLC and J.P. Morgan Securities LLC are serving as equal lead financial advisors and Wilson Sonsini Goodrich & Rosati Professional Corporation is serving as legal counsel to Momentive.

**Insiders' Interests in the Proposed Transaction**

27.     Momentive insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Momentive.

28.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Zendesk.  Pursuant to the Merger Agreement, all outstanding Company options held by non-employee directors will vest and convert into the right to receive the Merger Consideration.  The following table summarizes the value of options that Momentive's non-employee directors stand to receive:

| | Number of Shares of Momentive Common Stock Subject to Outstanding Momentive Options* | Estimated Value of Cashed Out Momentive Options($) |
|---|---|---|
| Susan Decker | 236,176 | 1,571,148 |
| David Ebersman | 236,176 | 1,571,148 |
| Dana Evan | 236,176 | 1,571,148 |
| Ryan Finley | 26,176 | 75,423 |
| Erika James | 135,551 | 1,114,758 |
| Sheryl Sandberg | 0 | 0 |
| Brad Smith | 236,176 | 1,571,148 |
| Benjamin Spero | 26,176 | 75,423 |
| Serena Williams | 236,176 | 1,571,148 |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

29.    Moreover, all outstanding vested Company restricted stock units ("RSUs") and restricted stock will convert into the right to receive the Merger Consideration upon closing of the merger.  The following tables summarize the value of RSUs and restricted stock that Company insiders stands to receive:

| | Number of Momentive RSUs | Estimated Value of Momentive RSUs($) |
|---|---|---|
| *Executive Officers* | | |
| Zander Lurie | 175,789 | 4,020,294 |
| Lora Blum | 19,434 | 444,456 |
| Deborah Clifford | 0 | 0 |
| Tom Hale | 51,500 | 1,177,805 |
| John Schoenstein | 29,737 | 680,085 |
| Rebecca Cantieri | 18,600 | 425,382 |
| Justin Coulombe | 31,344 | 716,837 |
| *Non-Employee Directors** | | |
| Susan Decker | 1,728 | 39,519 |
| David Ebersman | 1,728 | 39,519 |
| Dana Evan | 1,728 | 39,519 |
| Ryan Finley | 1,728 | 39,519 |
| Erika James | 8,290 | 189,592 |
| Sheryl Sandberg | 0 | 0 |
| Brad Smith | 1,728 | 39,519 |
| Benjamin Spero | 1,728 | 39,519 |
| Serena Williams | 1,728 | 39,519 |

| | Number of Shares of Momentive Restricted Stock | Estimated Value of Momentive Restricted Stock($) |
|---|---|---|
| Zander Lurie | 0 | 0 |
| Lora Blum | 32,411 | 741,240 |
| Deborah Clifford | 0 | 0 |
| Tom Hale | 56,720 | 1,297,186 |
| John Schoenstein | 40,514 | 926,555 |
| Rebecca Cantieri | 27,550 | 630,069 |
| Justin Coulombe | 50,417 | 1,153,037 |

30.    Further, if they are terminated in connection with the Proposed Transaction, Momentive's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)[2] | Equity ($)[3] | Perquisites / Benefits ($)[4] | Total ($)[5] |
|---|---|---|---|---|
| Zander Lurie | 1,171,308 | 5,258,107 | 51,769 | 6,481,184 |
| Lora Blum | 541,184 | 1,377,729 | 15,160 | 1,934,073 |
| Deborah Clifford[1] | 0 | 0 | 0 | 0 |
| Tom Hale | 738,542 | 2,973,671 | 34,513 | 3,746,726 |
| John Schoenstein | 736,123 | 1,882,254 | 16,909 | 2,635,286 |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**The Registration Statement Contains Material Misstatements or Omissions**

31.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Momentive's stockholders.   The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

32.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Zendesk's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Allen and J.P. Morgan.

***Material Omissions Concerning the Company's and Zendesk's Financial Projections***

33.     The Registration Statement omits material information regarding the Company's and Zendesk's financial projections.

34.     For example, in connection with their discounted cash flow analyses of Momentive and Zendesk, Allen and J.P. Morgan utilized the standalone unlevered, after-tax free cash flows that Momentive and Zendesk were forecasted to generate during the fiscal years ending December 31, 2021, through December 31, 2031.   The Registration Statement fails, however, to disclose the standalone unlevered, after-tax free cash flows that Momentive was forecasted to generate during the fiscal years ending December 31, 2027, through December 31, 2031, and standalone unlevered, after-tax free cash flows that Zendesk was forecasted to generate during the fiscal years ending December 31, 2026, through December 31, 2031.

35.     Additionally, with respect to the Company's and Zendesk's projections, the Registration Statement fails to disclose the line items underlying Non-GAAP Operating Income and Unlevered Free Cash Flow.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

36.     The omission of this material information renders the statements in the "Zendesk Unaudited Financial Projections" and "Momentive Unaudited Financial Projections" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Allen's and J.P. Morgan's Financial Analyses***

37.     The Registration Statement omits material information regarding Allen's and J.P. Morgan's financial analyses.

38.     The Registration Statement describes Allen's and J.P. Morgan's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the description of Allen's and J.P. Morgan's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Momentive's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Allen's and J.P. Morgan's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

39.     With respect to Allen's *Selected Public Companies Analyses* and *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual financial multiples and metrics for each of the comparable companies and transactions observed by Allen in the analyses, respectively.

40.     With respect to Allen's *Discounted Cash Flow Analyses*, the Registration Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows that Momentive was forecasted to generate during the fiscal years ending December 31, 2027 through December 31, 2031; (ii) the standalone unlevered, after-tax free cash flows that Zendesk was forecasted to generate during the fiscal years ending December 31, 2026 through December 31, 2031; (iii) quantification of the terminal values; and (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 8.0% to 9.25% for Momentive and 7.25% to 8.5% for Zendesk.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

41.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Momentive, the Registration Statement fails to disclose: (i) the unlevered free cash flows that Momentive is expected to generate during the remainder of fiscal year 2027 through fiscal year 2031; (ii) quantification of the terminal values for Momentive; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0% to 10.0%.

42.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Zendesk, the Registration Statement fails to disclose: (i) the unlevered free cash flows that Zendesk is expected to generate during the remainder of fiscal year 2026 through fiscal year 2031; (ii) quantification of the terminal values for Zendesk; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.25% to 9.25%.

43.     Without such undisclosed information, Momentive stockholders cannot evaluate for themselves whether the financial analyses performed by Allen and J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Allen's and J.P. Morgan's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

44.     The omission of this material information renders the statements in the "Momentive Unaudited Financial Projections," "Zendesk Unaudited Financial Projections" and "Opinions of Momentive's Financial Advisors" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

45.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the

stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Momentive will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.   The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about the Company's and Zendesk's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Allen and J.P. Morgan.   The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

49.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

50.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

51.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     The Individual Defendants acted as controlling persons of Momentive within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of Momentive, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Registration Statement.

56.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Momentive's stockholders will be irreparably harmed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Momentive, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Momentive stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 5, 2022                    **WEISSLAW LLP**
                                          Joel E. Elkins

                                          By: */s/ Joel E. Elkins*

                                          Joel E. Elkins
                                          611 Wilshire Blvd., Suite 808
                                          Los Angeles, CA 90017
                                          Telephone:  310/208-2800
                                          Facsimile:   310/209-2348
                                                    -and-
                                          Richard A. Acocelli
                                          305 Broadway, 7th Floor
                                          New York, NY 10007
                                          Telephone: 212/682-3025
                                          Facsimile:  212/682-3010

                                          *Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS